JANVIER, Judge.
Shortly after nine o’clock on the night of January 3, 1948, there was a collision between two automobiles on the State Highway, on the east side of the Mississippi River, which extends from New Orleans to and below Pointe-a-la-PIache, the Parish Seat of Plaquemines Parish. The accident occurred very near a small settlement known as English Turn which is several miles below the City of New Orleans.
One of the cars, owned and driven by Bartholomew L. Gehbauer, was going in an up-river direction. On the front seat -with Gehbauer was Mrs. Pauline Alesich, widow of August Garvallo. The other car, which was going in the other or downriver direction, was owned and driven by Thomas L. Whaley. On the front seat with him was his friend and fishing companion, Orion B. Chanfrau. Both cars were badly damaged and the four occupants — two in each car — sustained physical injuries, some more or less serious.
Mrs. Pauline Alesich Carvallo initiated this litigation by filing suit in forma pauper-is in the Civil District .Court for the Parish of Orleans against Whaley and Chan-frau and The Century Indemnity Company, which corporation she alleged to be the liability insurance carrier of Whaley. She alleged that either Whaley or Chanfrau— she did not know which — was driving the other car and that the accident was caused by the negligence of the operator of that other car. She prayed for solidary judgment against the three said defendants in the sum of $20,000.00.
About two months after that first suit was filed, Gehbauer also filed suit against the same three defendants, making the same allegations as to the cause of the accident, and as to the ownership and operation of the car. He prayed for solidary judgment against the three defendants in the sum of $850.00.
Shortly after the second suit had been filed by Gehbauer, Whaley filed suit against Gehbauer, alleging that the accident had been -caused entirely by the negligence of Gehbauer. He prayed for judgment against Gehbauer in the sum of $3,376.28, of which $866.28 was for the hauling of his automobile to a repair station and there repairing it. The remaining amount was for physical injuries sustained by Whaley.
*546 Whaley, Chanfrau and The Century Indemnity Company answered the petition of Mrs. Carvallo and the petition of Gehbauer, denying that Chanfrau had anything to do with the operation of the Whaley car, denying also that Whaley had been at any way at fault and averring that the sole cause of the accident had been negligence on the part of Gehbauer. In the alternative that it might appear that there had been any negligence on the part of Whaley, the said three defendants alleged that the proximate cause of. the accident was the contributory negligence of Gehbauer.
Gehbauer answered the suit of Whaley, denying there had been any negligence on his part and averring that the cause of the accident was the negligence of Whaley.
Whaley, Chanfrau and The Century Indemnity Company obtained an order consolidating the three suits for purpose of trial but providing for a separate judgment in each suit. Mrs. Carvallo thereupon, by rule nisi, called upon Whaley, Chanfrau and The Century Indemnity Company to show cause why the order consolidating the suits should not be dissolved and the suit in which she was plaintiff tried separately from the other two suits. We cannot ascertain from the record what was the outcome of this rule, but shortly after it had been filed, all of the parties filed a joint motion under which they asked that the three cases be fixed 'for trial at the same time, and as a result of that order, the three cases were ordered tried together “with separate judgments to be rendered in each case.”
After a lengthy trial, there was judgment dismissing the suit of Mrs: Carvallo. There was another judgment dismissing the suit of Gehbauer, and there was a third judgment in favor of Whaley against Geh-bauer for $1065.00 with legal interest from judicial demand and for costs.
The District Judge rendered reasons for judgment which were applicable in all three of the cases. Mrs. Garvallo and Geh-bauer filed a joint motion for appeal, devolutively and suspensively, upon Geh-bauer furnishing bond for suspensive appeal in the case in which Whaley had obtained judgment against him. The three cases were argued and submitted before us at the same time.
It is conceded that Whaley and not Chanfrau was driving the Whaley car and the suits as against him were abandoned.
There are presented only questions of fact. The two cars came together almost, though not quite, “head-on” far over on the side of the road nearest the river, which was the correct side for the Whaley car and the incorrect side for the Gehbauer car, and the only question is where the blame should be placed — whether Geh-bauer’s explanation of his being on that side of the road is to be accepted. His explanation is that as he was proceeding in the up-river direction and just after he had passed through a rather sharp curve to his right, he saw the headlights of the Whaley car, which was coming towards him and which was swerving or weaving from one side of the road to the other. He says that he reduced the speed of his car, and that at the last moment, when he thought that the Whaley car would remain on its left or wrong side, he turned sharply to his left in the hope that he could pass around the Whaley car on that side of the road, but that just as he did so the Whaley car was suddenly swerved to its right and that, therefore, the two cars met almost head-on.
Whaley says, on the other hand, that as he was on his way in a down-river direction, just as he reached the curve which was to his left, he saw the lights of the Gehbauer car, which was going in the other direction at an excessive speed. Whaley says that he pulled his car to the right as far as he could and had substantially reduced its speed, when the Gehbauer car, because of its speed and because of the effect of attempting to negotiate the curve at high speed, swung to its left across the road and into his car.
The District Judge reached the conclusion that the Gehbauer car had swung across the road and that the Whaley car had been driven as far to its right as was possible when Whaley realized that the oncoming car was crossing over to his side.
*547 There is, of course, conflicting testimony. Gehbauer and his guest passenger, Mrs. Carvallo, tell substantially the same story, though they differ in details; for instance, as to how many swerves or zigzags the Whaley car made. They are supported, to some extent, by Dr. DTngianni, who says that he was following the Gehbauer car. On the other 'hand, Whaley and his guest passenger, Chanfrau, insist that they were on the proper side of the road and that just as the Gehbauer car swung around the curve it crossed to their side and they realized that it was going to crash into their car.
The one most important fact which is not in dispute is that when the two cars came to rest, the Whaley car was on its extreme right side of the road, its two right wheels being off the paved portion and on the shoulder, whereas the Geh-bauer car was on the wrong side and had crashed into the Whaley car.
Dr. DTngianni, who says that he had been following the Gehbauer car all the way from Pointe-a-la-Hache, says that after the crash he went to the Whaley car, and that although that car was burning, Whaley and Chanfrau were still sitting in it; that Whaley was at the wheel, which had been practically completely destroyed, and was trying to start the car. He indicated that this action on the part of Whaley resulted from the fact that he was intoxicated and Dr. DTngianni says that he smelled liquor on Whaley’s breath. As a matter of fact the Whaley car did not burn. After the occurrence there was no evidence whatever of damage by fire to the Whaley car.
There is other testimony which, to some extent, contradicts the testimony of Dr. DTngianni. ■ Whaley says that he does not drink at all and that he did not take a drink on that night before the accident. Chanfrau too says that they had had nothing to drink. Other witnesses testified that there was no evidence of Whaley’s intoxication and the records of the hospital to which Whaley was taken after the accident make no mention of any such condition.
There are certain inconsistencies in the testimony of Gehbauer, Mrs. Carvallo and Dr. DTngianni.- Gehbauer and Mrs. Car-vallo say that all the way from Pointe-a-la-Hache they had been driving at a very moderate speed. Gehbauer says that he had been driving at a speed of between 25 and 30 miles an hour. Mrs. Carvallo says that their speed in coming up from Pointe-a-la-Hache had been from 20 to 30 miles an hour. Dr. DTngianni, on the other hand, says that he had been following them all the way; that their speed had been between 40 and 50 miles an hour and yet he did not overtake them.
It strikes us as strange that Dr. D’ln-gianni would have left Whaley and Chan-frau sitting in their car drunk and trying to start it if it was burning as he says it was. Surely he would have gotten them out if he had found the conditions which he says he found.
We have discussed the evidence in a very sketchy way because the District Judge rendered a written opinion and took great pains to go into all details, and we have thought it advisable to reproduce that opinion here. It now follows:
“These three cases all arise out of the same accident, which took place at English Turn, a community in St. Bernard Parish, Louisiana, on January 3, 1948, at or about 9:15 p. m., between an automobile owned and driven by Thomas L. Whaley and an automobile owned and driven by Bartholomew L. Gehbauer. Mr. Whaley had as his guest passenger a Mr. Orion B. Chanfrau; Mr. Gehbauer had as his guest passenger a Mrs. Pauline Alesich, widow of August Carvallo. One of these suits is brought by Gehbauer against Whaley, another is brought by Mrs. Carvallo against Whaley, and the third suit is brought by Whaley against Gehbauer. Chanfrau was made a defendant because plaintiffs Geh-bauer and Mrs. Carvallo did not know who was driving the Whaley car at the time of the accident. It having been proved conclusively that Mr. Chanfrau was not the driver, but only a passenger of Mr. Whal-ey’s, no action for damages would lie against him.
*548 "The suits of Mrs. Carvallo and Mr. Gehbauer contain identical allegations of negligence. In paragraph 7 of both petitions it is alleged that the driver of the Whaley car was travelling at an excessive rate of speed and weaving from one side of the road to the other, and that he was driving under the influence of intoxicating liquor.
“These plaintiffs have failed to prove that Mr. Whaley was driving under the influence of liquor. The testimony adduced by the plaintiffs to establish this charge was elicited from Dr. DTngianni, who on direct examination stated that Mr. Whaley was drunk when he got to the scene of the accident immediately after its occurrence. Dr. DTngianni stated that he walked over to the Whaley car and either opened the door or poked his head inside the window, and smelled the aroma of alcohol on Mr. Whaley’s breath. He further stated that Mr. Whaley was sitting in his automobile with Mr. Chanfrau and that he was attempting to start his car even though it was smoking. Because of the fact that Mr. Whaley) was sitting in the car and grinding his starter, and because he, Dr. DTngianni, said he smelled the aroma of alcohol in the automobile, he concluded that Mr. Whaley was drunk. However, on cross-examination, the doctor freely admitted that any person who had been in a serious accident, as Mr. Chan-frau and Mr. Whaley had just experienced, would be suffering from shock, and stunned. No action of Mr. Whaley’s other than his attempting to start his car, was cited by Dr. D’lngianna to justify his first statement that Mr. Whaley was drunk. Nothing in his manner, of speech or other actions substantiated the doctor’s first statement. Mr. Whaley testified he had not had a drink on the evening of the accident, that he was suffering from stomach trouble and high blood pressure. Deputy Sheriff Oddo, who was plaintiff’s 'witness, testified that he helped Mr. Whaley out of his car and that he smelled no liquor on his breath.
“Adam Melerine came upon the scene o'f the accident shortly after its occurrence and transported Mr. Chanfrau and Mr. Whaley to the Charity Hospital in New Orleans. He testified that neither Mr. Whaley nor Mr. Chanfrau smelled of alcoholic liquor, and that neither of them acted as though they were drunk. The records of Charity Hospital, for both Mr. Whaley and Mr. Chanfrau, contain no notation as to alcoholism. The court asked Deputy Sheriff Oddo, who assisted Mr. Whaléy from his car, and who had to support him because he was suffering from shock and injury, whether or not he could smell any alcoholic liquor on Mr. Whaley’s breath, and he replied, in the negative, even though his head was very close to that of Mr. Whaley at the time, he assisted him from the vehicle.
“With regard to the charge that Whaley was driving his automobile at an excessive rate of speed, and weaving from one side of the road to the other, the witnesses who testified to the weaving of Mr. Whaley’s automobile were the plaintiffs, Mrs. Car-vallo and Mr. Gehbauer. Gehbauer testified he had been driving at a speed of about thirty miles per hour from the time he left Pointe-a-la-Hache. He testified he slowed down to make the turn at English Turn, and after completing the curve he saw the Whaley car coming in a direction 'from New Orleans, weaving across the road. He stated that Mr. Whaley’s car weaved back and forth twice, and when Mr. Whaley’s car was a short distance from him it was on the wrong side of the road; that he swerved to the left to avoid a collision. Gehbauer testifies that then Mr. Whaley’s car swerved to its right and the collision occurred on the levee side of the road, the proper side of the road for the Whaley car.
“Gehbauer testified that the accident happened one hundred yards on the New Orleans side of a bend in the road known as English Turn. Mr. Gehbauer was proceeding from Pointe-a-la-Hache towards New Orleans, and Mr. Whaley was proceeding from New Orleans towards Pointe-a-la-Hache. As heretofore stated, Mr. Gehbauer testified he was past the worst part of the curve, (which occurs near the slanting post shown on the photographs in evidence) and in the straight-away on the New Orleans side of the curve when the *549 accident happened. Mrs. Carvallo, who was a confused witness, testified to the same effect. Every other witness in the case testified that the accident happened between the slanting post shown in the photographs and the first mail box towards the City of New Orleans. Some fix the distance from the post at 125 feet, others fix it at 75 ft. Deputy Sheriff Oddo placed the scene of the accident 50 ft. north of the slanting post. At any event, the accident occurred a short distance north of the slanting post shown in the photographs. This slanting post is just at or beyond the sharpest point of the curve.
“At the request of both counsel, the court visited the scene of the accident and noted the conditions at the curvé. The court takes cognizance of the fact that the accident happened on January 3, in the winter time, and that the court visited the scene on April 2, 1949, in the Spring of the year.
.“Two witnesses have testified it is not safe to drive around that curve at a speed of forty-five miles per hour. Dr. D’lngian-ni testified he followed Gehbauer’s car at a short distance behind him, all the way from Pointe-a-la-Hache to the point of the collision, and Gehbauer’s car was being driven at approximately forty mjles an hour. Gehbauer testified he slowed down in rounding the curve.
“The physical facts are that Whaley’s car was on its right side of the road after the accident, in a parallel position to the road, and that the right wheels were about fifteen to eighteen inches onto the shoulder of the road. The facts shown by the record indicate that Gehbauer’s car was at an angle, with its rear jutting out into the road, and that it was in contact, left front fender to left front fender, with the Whal-ey car. These facts would indicate to the court that Gehbauer rounded the curve at a higher rate of speed than he would have the court believe, and that in so doing it was necessary for him to give way to the left and get on the outside of the curve and that he had not been able to bring his car back to a position on its right side of the road before he had the collision with the Whaley car.
“Both Whaley and Chanfrau testified that the Whaley car was on its right hand side of the road and that Mr. Whaley when he saw the accident was imminent, pulled over as far on the shoulder as possible. There is no evidence as to Mr. Whaley’s speed at the time, other than the testimony of Mr. Chanfrau and that of Mr. Whaley himself.. They testified that prior to the accident they were driving at about thirty-five miles per hour.
“Plaintiffs have failed to substantiate their allegation of drunkeness, and they have failed to bear the burden of proving negligence, and excessive speed on the part of Mr. Whaley, and they have failed to establish that Mr. Whaley’s car was being driven in a negligent manner. Accordingly their cases will be dismissed at their cost.
“There remains the case of Mr. Whaley against Mr. Gehbauer. Mr. Whaley testified that he had contusions of the knees, chest and face, that he was at home for a week after the accident, that he had chest pains for two or three days, that his knees were sore and swollen, that he had some scars on his knees that are now pretty well healed, and that he cannot walk very well because his legs give way under him. He is, however, a man sixty-seven years of age, and no medical testimony was adduced on his behalf other than the Charity Hospital report on file in this case. His condition of being unable to walk except with a cane may or may not be attributable to Mr. Whaley’s age or other causes, and the court does not feel justified, in taking this element into consideration in assessing damages.
“The court believes an award of $250 for personal injuries is sufficient. The testimony and the bill in evidence show that the damages to Mr. Whaley’s car amounted to $815, and he should have a judgment in that amount, making a total of $1065.”
The conclusions reached by the District Judge are amply justified by the record which is before us.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.